

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00411-CR
No. 07-19-00412-CR
No. 07-19-00413-CR

**DAVID BRENT GREEN, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 100th District Court
Donley County, Texas
Trial Court Nos. 4019, 4021, 4022, Honorable Stuart Messer, Presiding

July 14, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, David Brent Green, was placed on deferred adjudication community supervision in three causes after pleading guilty to the felony offenses of burglary of a habitation, retaliation, and tampering with evidence.[1]  The State later moved to revoke Appellant's community supervision in each action.  The trial court held a hearing wherein

---

[1] *See* TEX. PENAL CODE ANN. §§ 30.02, 36.06, 37.09 (West 2019 & 2016) (second-degree felony, third-degree felony, and third-degree felony respectively).

each action was called separately, adjudged Appellant guilty as to each offense, and sentenced Appellant thrice to a total of thirty-one years' confinement to be served in consecutive terms: twenty years' confinement for burglary of a habitation, to be served before serving seven years' confinement for retaliation, to be served before serving four years' confinement for tampering with evidence.

On appeal, Appellant asserts the trial court abused its discretion by (1) admitting evidence obtained by an improper search of his truck following an illegal traffic stop; (2) admitting evidence obtained pursuant to an illegal search of his truck conducted without voluntary consent; (3) finding by a preponderance of the evidence that Appellant violated the terms of his community supervision (a) by possessing alcohol, (b) by associating with Timothy Lockeby, and (c) by purchasing, possessing, and transporting a firearm; (4) ordering Appellant's sentences to run consecutively rather than concurrently; and (5) assessing the maximum sentence allowed after adjudicating Appellant guilty of the second-degree felony offense of burglary of a habitation. We affirm the trial court's judgments.

## Background

In July 2018, three indictments issued charging Appellant with a variety of felony offenses. In cause number 4019, the indictment alleged that on or about June 13, 2018, Appellant, with intent to commit theft, entered a habitation, without the effective consent of the owner, Justin Shea Davis. In cause number 4021, the indictment alleged that on or about July 6, 2018, Appellant threatened to kill Davis in retaliation for, or on account of his service, i.e., reporting or intending to report the occurrence of a crime. In cause

2

number 4022, the indictment alleged that on or about July 12, 2018, Appellant offered, conferred, or agreed to confer a benefit to Davis with the intent to influence his participation in an official proceeding, or coerced him, a witness or prospective witness, in an official proceeding to withhold testimony, information, or documents, by requesting Timothy Joseph Britton pay United States currency to Davis to not proceed with the retaliation charges.

On July 17, 2018, plea proceedings were held in each of the causes. Appellant pled guilty in each cause, understanding that a guilty plea to the second-degree felony for burglary of a habitation carried a mandatory sentence of confinement for not less than two years nor more than twenty years. He also pled guilty to the third-degree felony offenses of retaliation and tampering with evidence with an understanding such charges each carried a mandatory sentence of confinement for not less than two years and not more than ten years. Pursuant to a plea agreement, however, the State and Appellant recommended that he serve five years deferred adjudication community supervision, perform 300 hours of community service, and pay $1,500 in restitution. The trial court accepted the parties' recommendation and sentenced Appellant in each cause to serve five years deferred adjudication community supervision, pay $1,500 in restitution, and perform 300 hours community supervision. The trial court also ordered that the three five-year sentences run concurrently.

An order also issued imposing conditions on Appellant's participation in community supervision in each of the three causes. Among other things, the trial court required in each cause that Appellant totally abstain from purchase or consumption of alcoholic beverages of any kind; avoid persons of harmful or disreputable character, including

3

knowingly or voluntarily associating with any persons with criminal records or who are currently on community supervision; report as directed to his community supervision officer each month; remain within the supervising county and not leave without his officer's permission; pay a monthly community supervision fee; pay a minimum monthly payment until all court-ordered fees are paid; and totally abstain from purchasing, transporting, or possessing a firearm or ammunition. In the cause related to Appellant's burglary conviction, the trial court also required that Appellant complete 300 hours of community service on a schedule set forth in the order.[2]

Eight months after Appellant's guilty pleas, the State filed its Motion to Adjudicate the Guilt of Defendant in each of the three causes, alleging Appellant had violated numerous of the trial court's order imposing conditions on Appellant's community supervision. In November 2019, the trial court held a hearing on the State's motions calling each cause separately. At the hearing, Appellant pled true to the allegations that he failed to report for two months and that he left the supervising county without permission. The State offered two witnesses in each cause: Mark White (Appellant's Community Supervision Officer) and Cole Harwell (law enforcement officer).[3] White testified Appellant had violated the court's conditions on community supervision, in the following ways:

- being in possession of alcohol in March 2019;
- associating with Timothy Lockeby, who had a criminal record and was currently on community supervision;

---

[2] Appellant was required to complete seventy-five hours of community service by January 1, 2019.

[3] In addition to the State's evidence, Katherine Williams, Appellant's mother, testified on his behalf.

- failing to report for two months (December 2018 and January 2019);

- leaving the county without permission;

- failing to make his monthly supervision fee for two months;

- failing to document any community service hours; and

- purchasing/transporting/possessing a firearm and ammunition.

Officer Harwell testified that on March 2, 2019, he observed Appellant driving a truck pulling a trailer loaded with a skid steer. He initiated a traffic stop after noticing the trailer was not displaying a license plate[4] and subsequently identified Timothy Lockeby as a passenger. Once Officer Harwell was satisfied the skid steer was properly secured with chains and straps, he asked Appellant if there was anything illegal in the vehicle. Appellant replied in the negative and gave consent for Harwell to search the truck. Pursuant to the search, Officer Harwell found a case of beer in the center of the backseat with one beer missing and a loaded handgun in a backpack behind the driver's seat. Appellant volunteered he had bought the handgun two months earlier in January 2019.

At the hearing's conclusion, the trial court revoked Appellant's community supervision finding he violated five conditions in the prior orders: possessing alcohol; associating with Lockeby; failing to report; leaving the county without permission; failing to file statements of inability to pay; and purchasing, possessing, and transporting a firearm. The trial court made a determination that Officer Harwell's testimony was "credible." Finding the evidence in each cause sufficient to convict, the trial court found Appellant guilty of burglary of a habitation, retaliation, and tampering with evidence. The

---

[4] The Texas Transportation Code provides that "[a] person commits an offense if the person operates on a public highway during a registration period a . . . trailer or semitrailer that does not display a license plate." TEX. TRANSP. CODE ANN. § 504.943(b) (West Supp. 2020).

5

trial court then imposed the thirty-one-year sentence of confinement Appellant complains of.  This appeal followed.

## Standard of Review

We review a trial court's decision to revoke deferred adjudication community supervision and proceed to an adjudication of guilt under an abuse of discretion standard in the same manner that we review revocation of community supervision when a determination of the defendant's guilt is not deferred.  *See* TEX. CODE CRIM. PROC. ANN. art. 42A.108 (West 2018) ("The determination to proceed with an adjudication of guilt on the original charge is reviewable in the same manner as a revocation hearing conducted under Article 42A.751(d) [of the Texas Code of Criminal Procedure] in a case in which adjudication of guilt was not deferred."); *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).  In a revocation proceeding, the State must prove by a "preponderance of the evidence" that the defendant violated a condition of community supervision as alleged in the motion to revoke or adjudicate.  *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993).  The finding of a single violation of community supervision is sufficient to support revocation.  *Garcia*, 387 S.W.3d at 26.  Therefore, only if the State fails to meet its burden of proof as to every ground alleged will the trial court have abused its discretion by revoking community supervision.  *Cardona v. State*, 665 S.W.2d 492, 493-94 (Tex. Crim. App. 1994) (*en banc*).

In the context of a revocation proceeding, a "preponderance of evidence" means "that greater weight of the credible evidence which could create a reasonable belief that the defendant has violated a condition of his [community supervision]."  *Hacker v. State*,

6

389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (citing *Rickels v. State*, 202 S.W.3d 759, 764 (Tex. Crim. App. 2006)). In determining the sufficiency of evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling to determine whether there is some evidence supporting the trial court's decision. *Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. 1979); *Herald v. State*, 67 S.W.3d 292, 293 (Tex. App.—Amarillo 2001, no pet.). In determining whether some evidence supports the trial court's decision, we must keep in mind that the trial judge is the sole trier of fact and arbiter of the credibility of witnesses. *Johnson v. State*, 386 S.W.3d 347, 350 (Tex. App.—Amarillo 2012, no pet.).

Issues One and Two—Traffic Stop/Search

In issue one, Appellant contends the trial court abused its discretion by admitting evidence that a case of beer and a loaded firearm were found in Appellant's truck, claiming (1) no reasonable suspicion for Officer Harwell to stop Appellant's truck and (2) the traffic stop lasted longer than necessary to effectuate the stop. In his second issue, Appellant contends Officer Harwell's search of Appellant's pickup was illegal because he did not inform Appellant he had the right to refuse consent to search of the vehicle. We reject both arguments.

An officer may make a warrantless stop on a reasonable suspicion of a traffic violation. *See Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *Derichsweiler v. State,* 348 S.W.3d 906, 913-14 (Tex. Crim. App. 2011). The reasonable suspicion standard requires only "some minimal level of objective justification" for the stop and disregards an officer's actual subjective intent. *See United States v. Sokolow*, 400

7

U.S. 1, 7 (1989); *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2015). For a peace officer to stop a motorist to investigate a traffic infraction, "proof of the actual commission of the offense is not a requisite." *Leming v. State*, 493 S.W.3d 552, 561 (Tex. Crim. App. 2016) (quoting *Drago v. State*, 553 S.W.,2d 375, 377 (Tex. Crim. App. 1977)).

Officer Harwell testified he stopped Appellant's truck because he observed Appellant was towing a trailer without a license plate. This is evidence Harwell had a reasonable suspicion Appellant was committing a traffic offense, *viz.*, Texas Transportation Code § 504.943(b). This uncontroverted evidence permits a finding Officer Harwell had a reasonable suspicion of a traffic violation when he initiated the traffic stop. *See Jaganathan*, 479 S.W.3d at 247.

Appellant also contends the traffic stop lasted longer than necessary to effectuate the stop. Because Harwell had a reasonable suspicion to initiate the stop, he was entitled to request Appellant's driver's license, vehicle registration, and proof of insurance, and to perform a computer check on the information. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). The officer also was authorized to ask Appellant about matters unrelated to the purpose of the stop so long as the questioning did not measurably extend the duration of the stop. *Id.* (citing *Arizona v. Johnson*, 555 U.S. 323, 333 (2009)). The evidence shows that Harwell identified the occupants of the truck and assured that the trailer was not stolen and that the skid steer was properly secured with chains and straps before obtaining permission from Appellant to conduct a search of the truck. Accordingly, the circumstances shown from the evidence do not support a holding that Officer Harwell's questioning unduly extended the duration of the stop.

Nor did Harwell improperly extend the duration of the stop when he asked Appellant whether there was anything illegal in the truck, followed by Appellant's volunteering that the officer was free to conduct a search. A continued detention and request to search a detainee's vehicle following a traffic stop is reasonable when consent is given, even when no circumstances would raise reasonable suspicion of other criminal activity. *Sieffert v. State*, 290 S.W.3d 478, 482-83 (Tex. App.—Amarillo 2009, no pet.) (citing *Ohio v. Robinette*, 519 U.S. 33, 36, 39-40 (1991)).

In a related vein, Appellant asserts Harwell's search of the vehicle was illegal, contending the officer failed to inform Appellant of the option to refuse consent. This assertion was rejected in *Ohio v. Robinette*, 519 U.S. 33 (1996) wherein the United States Supreme Court stated that it would be "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Id.* at 39-40. Based on the available evidence and authority, we cannot say the trial court abused its discretion by finding Officer Harwell had a reasonable suspicion to perform a traffic stop and obtained voluntary consent to search Appellant's vehicle, Appellant's first two issues are overruled.

### Issues Three and Five

In issues three and five, Appellant asserts there exists insufficient evidence he (1) was in possession of the beer on the backseat of his truck and (2) purchased, possessed, or transported a handgun. We disagree.

The evidence indicates Appellant was driving his truck when Officer Harwell effected the traffic stop. When the passenger door of his truck was opened, an open can

of beer rolled out. An opened case of beer was found sitting in plain view in the center of Appellant's backseat within Appellant's reach. The quantity of beer, a case of twenty-four cans, raises an inference that the beer was intended to be consumed by more than one person. Assessing the evidence in a light most favorable to the trial court's determination, we hold there is some evidence supporting the finding that Appellant possessed the beer in the backseat of his truck in violation of his conditions of community supervision. *See Hacker*, 389 S.W.3d at 865.

As shown above, Officer Harwell had a reasonable suspicion Appellant was in violation of the Texas Transportation Code when he stopped Appellant's truck and when Appellant voluntarily consented to a search of his truck. While conducting the search, Officer Harwell discovered a loaded handgun in a backpack sitting behind Appellant's seat. Appellant admitted he purchased the handgun two months earlier, a time during which Appellant was on community supervision. Assessing the evidence in a light most favorable to the trial court's determination, we find there is some evidence supporting the finding that Appellant purchased, possessed, and transported a loaded handgun in violation of a condition of his community supervision. *See Hacker*, 389 S.W.3d at 865.[5] Accordingly, Appellant's issues three and five are overruled.

---

[5] Appellant contends Officer Harwell's testimony regarding Appellant's handgun should not have been admitted because the actual handgun was not produced at trial. However, no party questioned whether the firearm existed; the only necessary element was for the State to prove Appellant purchased, possessed, or transported the handgun. Appellant's voluntary confession to the officer that he bought the firearm during the period in which he was prohibited from so doing was independent evidence to support Appellant's revocation without regard to whether Harwell recovered the handgun on the day of the stop.

## Issue Four

Appellant's issue four, which challenges his alleged association with Lockeby, is pretermitted. The evidence sufficiently supports multiple violations of the conditions of his community supervision, including two violations Appellant does not even challenge on appeal. *See Garcia*, 387 S.W.3d at 26 (single violation of community supervision sufficient to support revocation). *See also* TEX. R. APP. P. 47.1.

## Issue Six

Next, Appellant contends the trial court abused its discretion when ordering the sentences in the cause numbers to run consecutively instead of concurrently. Appellant contends the three offenses arose from the same criminal episode and were disposed of in a single criminal proceeding. The State disagrees. So do we.

Article 42.08 of the Texas Code of Criminal Procedure permits a trial court to issue sentences in criminal actions, under certain conditions, either concurrently or consecutively. TEX. CODE CRIM. PROC. ANN. art. 42.08 (West 2018). Section 3.03 of the Texas Penal Code requires sentences to run concurrently when a defendant is "found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action." TEX. PENAL CODE ANN. §3.03 (West Supp. 2020). Section 3.01 defines "criminal episode" as the commission of one or more offense under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses." *Id.* at § 3.01 (West 2011).

Appellant contends his offenses were part of the same criminal episode because the victim was the same in each indictment. Appellant reasons that but for his commission of burglary, he would have no need to have threatened to kill Davis in retaliation for her reporting the crime or to have attempted to discourage her participation in the burglary proceedings by conferring a benefit. In other words, Appellant essentially argues the length of his overall term of imprisonment should be shorter because his subsequent crimes were merely attempts to prevent the evidence of his first crime from being discovered and adjudicated. We have little difficulty rejecting Appellant's argument. The elements of burglary of a habitation, retaliation, and tampering with evidence are not the same or even similar. *Compare* TEX. PENAL CODE ANN. §§ 30.02, 36.06, 37.09 (West 2019 & 2016). The offenses occurred on three different dates and for different reasons. Appellant does not demonstrate he was engaging in a common scheme or plan where the third offense was merely an extension of his first. Appellant's subsequent criminal acts were undertaken because his earlier acts were discovered and he sought to avoid arrest and conviction for those.

Further, Appellant's original plea/sentencing proceedings and subsequent revocation/adjudicate/sentencing proceedings were not conducted as a "single" proceeding but occurred separately, with witnesses produced in each cause and counsel arguing each case individually. Under these circumstances, Appellant's sentences were not required to be run concurrently. *See* TEX. PENAL CODE ANN. § 3.03 (West Supp. 2020); *Dach v. State,* 49 S.W.3d 490, 491 (Tex. App.—Austin 2001, no pet.). "'To be entitled to concurrent sentences under § 3.03 [a defendant] must establish that the offenses were consolidated at the time of his pleas as well as the hearings on the motions to revoke his

probation.'" *Id.* (quoting *Duran v. State*, 844 S.W.2d 745, 748 (Tex. Crim. App. 1992) (Baird, J., concurring)).  We overrule Appellant's sixth issue.

## Issue Seven

Finally, Appellant argues his sentence of twenty-years' confinement for commission of burglary of a habitation is grossly disproportionate to his crime.  He urges his sentence should be based on the burglary of a habitation that occurred in June 2018, and not on the other crimes he committed.  He also asserts that his sentence should be compared to sentences required for other more serious crimes to determine whether it is grossly disproportionate.  Again, we disagee.

An allegation of excessive or disproportionate punishment is a legal claim "embodied in the Constitution's ban on cruel and unusual punishment" and based on a "narrow principle that does not require strict proportionality between the crime and the sentence."  *State v. Simpson*, 488 S.W.3d 318, 322, 24 (Tex. Crim. App. 2010) (citing *Hamelin v. Michigan*, 501 U.S. 957, 1001 (1991)).  *See* U. S. CONST. AMEND. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").  A successful challenge to proportionality is exceedingly rare and requires a finding of "gross disproportionality."  *Simpson*, 488 S.W.3d at 322-23.

To preserve for appellate review, a complaint that a sentence is grossly disproportionate or constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired.  *See* TEX. R. APP. P. 33.1(a); *Smith v. State,* 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Navarro v. State*, 588 S.W.3d 689, 690 (Tex. App.—Texarkana 2019,

no pet.) (holding that to preserve a disproportionate sentencing complaint, the defendant must make a timely, specific objection in the trial court or raise the issue in a motion for new trial). Appellant did not make a specific objection in the trial court or via motion for new trials that any sentence imposed by the trial court was disproportionate to any offense charged or in violation of his constitutional rights. *See* U. S. AMENDS. VII, XIV. We therefore hold Appellant has failed to preserve this complaint for our review. *See Smith*, 721 S.W.2d at 855; *Trevino v. State*, 174 S.W.3d 925, at 927-28 (Tex. App.—Corpus Christi 2005, pet. ref'd) (Because the sentence imposed is within the punishment range and is not illegal, we conclude the rights [Appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection.").

Even if we were to entertain Appellant's seventh issue, we would reject his argument. Appellant has failed to offer any evidence to support a finding that his sentence is grossly disproportionate to sentences imposed for the same crime in other jurisdictions. The Texas Court of Criminal Appeals has determined that whether a sentence is disproportionate, must be judged on "the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *State v. Simpson*, 488 S.W.3d 318, 322-23 (Tex. Crim. App. 2016) (citing *Graham v. Florida*, 488 U.S. 48, 60 (2010); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992)). Rather than compare his sentence with that of the same crime in other jurisdictions, Appellant attempts to satisfy *Simpson*'s comparative analysis by comparing his sentence for burglary with sentences mandated

14

by the Legislature for other offenses.  Appellant fails to demonstrate that his sentence was grossly disproportionate.  We overrule Appellant's seventh issue.

## Conclusion

We affirm the trial court's judgments.

Lawrence M. Doss
Justice

Do not publish.

Quinn, C.J., concurring in the result.